UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRANS WORLD ENTERTAINMENT CORPORATION; MAVERIK, INC.; CARMIKE CINEMAS, INC.; ABC CARPET CO., INC.; ABC HOME FURNISHINGS, INC.; ABC ORIENTAL CARPETS, INC.; THE ABC OUTLET, INC.; and ABC CARPET OF NEW JERSEY, LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>VISA INC.; VISA U.S.A. INC.; VISA INTERNATIONAL SERVICE ASSOCIATION; MASTERCARD INCORPORATED; and MASTERCARD INTERNATIONAL INCORPORATED,<br><br>        Defendants. | CASE NO.: 15-cv-2498<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiffs allege the following claims for relief against Defendants Visa Inc., Visa U.S.A. Inc., and Visa International Service Association (collectively "Visa") and against Defendants MasterCard Incorporated and MasterCard International Incorporated (collectively "MasterCard").

## I. INTRODUCTION

1. Visa and MasterCard have in the past and continue to manage, coordinate, and govern a combination and conspiracy in restraint of trade within the meaning of the Sherman Antitrust Act, 15 U.S.C. § 1. Each combination and conspiracy has as its members the overwhelming majority of banks or financial institutions that issue credit and debit cards in the United States. The vast majority of the banks and financial institutions that are members of Visa

1

are also members of MasterCard, and issue both Visa-branded and MasterCard-branded credit and debit cards. These member banks are independently owned and managed banks and financial institutions that compete to issue credit and debit cards to consumers, however, Visa and MasterCard govern and control the member banks, requiring that member banks agree to be bound by certain rules of Visa and MasterCard. These rules unreasonably restrain trade. Visa and MasterCard therefore are combinations in restraint of trade and Visa and MasterCard have entered into agreements with their member banks in restraint of trade, in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

2. The vast majority of the banks and financial institutions that are members of Visa are also members of MasterCard and issue both Visa-branded and MasterCard-branded payment cards to consumers. These payment cards consist of either debit cards or credit cards, each of which comprises a distinct product market. The relevant geographic market for credit and debit cards in this context is the United States.

3. Issuing banks earn income on credit and debit cards by, among other means, charging interchange fees that are paid by merchants for the privilege of accepting the payment cards. Because issuing banks profit from merchant acceptance of their payment cards, they should compete with one another for merchant acceptance, but the various practices and rules adopted by Visa and MasterCard and agreed to by the member banks limit and, in some cases, eliminate competition among member banks. Such rules and practices include, by way of example and without limitation: the adoption of "default" Interchange Fees, the Honor All Cards rule, the All Outlets Rule, the No Discount Rule and the No Surcharge Rule.

4. Visa and MasterCard and their member banks have substantial market power in the United States in the markets for merchant acceptance of debit cards and credit cards. Visa and MasterCard have maintained that market power despite judicial and legislative efforts to curb their market power over the past 20 years.

5. Plaintiffs paid millions of dollars from 2004-2012 in interchange fees to issuing banks that are members of Visa and MasterCard. The unreasonable restraints of trade imposed by Visa and MasterCard have caused substantial competitive injury to Plaintiffs, causing Plaintiffs to pay higher than competitive fees for the privilege of accepting debit and credit cards. Elimination or modification of the competitive restraints and restoration of competitive markets for merchant acceptance would substantially reduce interchange fees, allowing Plaintiffs to operate more efficiently and at lower costs, to the benefit of consumers.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 1337.

7. Venue is proper in this district because Defendants each reside in, are found in, have agents in, and transact business in this district as provided in 28 U.S.C. §1391(b) and (c) and in 15 U.S.C. §§ 15 and 22.

8. Each of the Defendants transacted business throughout the United States, including in this district and/or were engaged in an illegal anticompetitive scheme that was directed at and had the intended effect of causing injury to persons residing in, located in or doing business throughout the United States, including in this district.

## III. THE PARTIES

9. Defendants Visa International Service Association and Visa U.S.A. Inc. are Delaware corporations with their principal place of business in Foster City, California. In or around October 2007, Defendant Visa Inc. was created through a corporate reorganization. Defendant Visa Inc. is a Delaware corporation with its principal place of business in San Francisco, California. The member banks in Visa U.S.A. Inc. became the initial shareholders of Visa Inc.

10. Defendant MasterCard Incorporated was incorporated as a Delaware corporation in 2001, with its principal place of business in Purchase, New York. Defendant MasterCard International Incorporated was formed in 1966 as a Delaware membership corporation, consisting of more than 23,000 owner and member banks worldwide. MasterCard International Incorporated was a wholly-owned subsidiary of MasterCard Incorporated. In 2006, MasterCard Incorporated and MasterCard International Incorporated conducted an initial public offering which included issuing ownership shares to MasterCard's member banks. As a result of the IPO, MasterCard Incorporated operates today as a publicly-traded Delaware corporation with its principal place of business in Purchase, New York. MasterCard International Incorporated remains MasterCard Incorporated's principal operating subsidiary and does business as MasterCard worldwide.

11. Plaintiff Trans World Entertainment Corporation ("TWE") is a New York corporation with its principal place of business in Albany, New York. TWE and its subsidiaries including Record Town, Inc., Record Town, USA LLC, Record Town, Utah, LLC and Movies Plus, Inc. accept, or at relevant times accepted, both Visa and MasterCard

4

debit and credit cards for payment.  Accordingly, TWE has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' competitive restraints.  TWE therefore has been injured in its business and/or properties as a result of the unlawful conduct alleged herein.

12. Plaintiff Maverik, Inc. (formerly doing business as Maverik Country Stores, Inc. and Caribou Four Corners, Inc. and referred to herein as "Maverik") is a Wyoming Corporation with its principal place of business in North Salt Lake, Utah.  Maverik accepts, or at relevant times accepted, both Visa and MasterCard debit and credit cards for payment. Accordingly, Maverik has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' competitive restraints.  Maverik therefore has been injured in its business and/or properties as a result of the unlawful conduct alleged herein.

13. Plaintiff Carmike Cinemas, Inc. (referred to herein as "Carmike") is a Delaware corporation with its principal place of business in Columbus, Georgia.  Carmike and its subsidiaries including Eastwynn Theatres, Inc., Military Services, Inc., Carmike Giftco, Inc., GKC Michigan Theatres, Inc., GKC Theatres, Inc., GKC Indiana Theatres, Inc., Carmike Reviews Holdings, LLC, Carmike Motion Pictures Birmingham, LLC, Carmike Motion Pictures Daphne, LLC, Carmike Motion Pictures Birmingham II, LLC, Carmike Motion Pictures Birmingham III, LLC, Carmike Motion Pictures Huntsville, LLC, Carmike Motion Pictures Orange Beach, LLC, Carmike Motion Pictures Port St. Lucie, LLC, Carmike Motion Pictures Pensacola, LLC, Carmike Motion Pictures Melbourne, LLC, Carmike Motion Pictures Pensacola II, LLC, Carmike Motion Pictures Peoria, LLC, Carmike Motion Pictures Fort Wayne, LLC, Carmike Motion Pictures Indianapolis, LLC,

Carmike Motion Pictures Allentown, LLC, Carmike Motion Pictures Chattanooga, LLC, Motion Pictures Houston, L.P., Video Shawnee Theatres, Wooden Nickel Pub, Inc., Conway Theatres, LLC, Video Enid Theatres, and Video Enid Theatres Drive-in, accept or at relevant times accepted, both Visa and MasterCard debit and credit cards for payment. Accordingly, Carmike has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' competitive restraints. Carmike therefore has been injured in its business and/or properties as a result of the unlawful conduct alleged herein.

14. Plaintiff ABC Carpet Co., Inc. is a New York corporation with its principal place of business in New York. ABC Carpet Co., Inc. accepts, or at relevant times accepted, both Visa and MasterCard debit and credit cards for payment. Accordingly, ABC Carpet Co., Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' competitive restraints. ABC Carpet Co., Inc. therefore has been injured in its business and/or properties as a result of the unlawful conduct alleged herein.

15. Plaintiff ABC Home Furnishings, Inc. is a New York corporation with its principal place of business in New York. ABC Home Furnishings, Inc. accepts, or at relevant times accepted, both Visa and MasterCard debit and credit cards for payment. Accordingly, ABC Home Furnishings, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' competitive restraints. ABC Home Furnishings, Inc. therefore has been injured in its business and/or properties as a result of the unlawful conduct alleged herein.

16. Plaintiff ABC Oriental Carpets, Inc. is a New York corporation with its principal place of business in New York. ABC Oriental Carpets, Inc. accepts, or at relevant

times accepted, both Visa and MasterCard debit and credit cards for payment. Accordingly, ABC Oriental Carpets, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' competitive restraints. ABC Oriental Carpets, Inc. therefore has been injured in its business and/or properties as a result of the unlawful conduct alleged herein.

17. Plaintiff The ABC Outlet, Inc. is a Florida corporation with its principal place of business in Florida. The ABC Outlet, Inc. accepts, or at relevant times accepted, both Visa and MasterCard debit and credit cards for payment. Accordingly, The ABC Outlet, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' competitive restraints. The ABC Outlet, Inc. therefore has been injured in its business and/or properties as a result of the unlawful conduct alleged herein.

18. Plaintiff ABC Carpet of New Jersey, LLC is a New York company with its principal place of business in New Jersey. ABC Carpet of New Jersey, LLC accepts, or at relevant times accepted, both Visa and MasterCard debit and credit cards for payment. Accordingly, ABC Carpet of New Jersey, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' competitive restraints. ABC Carpet of New Jersey, LLC therefore has been injured in its business and/or properties as a result of the unlawful conduct alleged herein.

19. The Plaintiffs, including the subsidiaries and related entities identified herein, timely opted out of the Rule 23(b)(3) settlement class preliminarily approved by the Court on November 27, 2012 in the case captioned: *In re: Payment Card Interchange Fee and*

*Merchant Discount Antitrust Litigation*, Case No. 1:15-md-01720-JG-JO, United States District Court for the Eastern District of New York.

## IV. THE MARKETS AND THE RESTRAINTS OF TRADE

20. Two categories of general purpose payment cards have been accepted by merchants in the United States over at least the past 20 years: credit cards and debit cards. Credit cards and debit cards comprise two separate product markets and the United States is the relevant geographic market for each. *See United States v. Visa USA., Inc.,* 163 F. Supp. 2d 322 (S.D.N.Y. 2001), *affirmed,* 344 F.3d 229 (2d Cir. 2003).

21. Issuing banks are members of the Defendants' networks that receive revenue when a consumer uses one of their payment cards to purchase goods or services from a merchant. Acquiring banks are members of Defendants' networks that acquire purchase transactions from merchants. In exchange for the privilege of accepting the issuing bank's payment cards, the merchant pays a merchant discount fee and an interchange fee. The issuing bank receives the interchange fee and the acquiring bank receives the merchant discount fee.

22. The issuing banks that are members of the Defendants' networks are independently owned and managed businesses. In other aspects of their businesses, member banks compete against one another. Thus, member banks compete with one another to attract card holders by creating payment cards that offer attractive interest rates, annual fees, rewards and other features. Although member banks should likewise compete against one another for merchant acceptance of their payment cards, by the anticompetitive rules and practices described

herein the Defendants and their member banks have agreed among themselves not to compete for merchant acceptance.

23. Visa and MasterCard set default interchange fees on credit card and debit card transactions that merchants are required to pay to the issuing banks. The default interchange fees eliminate competition and potential competition among issuing banks for merchant acceptance. The default interchange fees constitute price fixing among competitors.

24. The Honor All Cards Rules require that a merchant that accepts any Visa or MasterCard credit card must accept all such credit cards, no matter which bank issued the card and regardless of the terms, including interchange fees, associated with acceptance of the card. These Rules eliminate competition among banks for acceptance of their payment cards by merchants.

25. The All Outlets Rules require merchants who accept Visa branded or MasterCard branded payment cards at any location to accept those cards at all of their locations. Until 2013, the All Outlets Rules also required merchants that used different trade names in different locations to accept Visa branded or MasterCard branded payment cards at all of their locations. These Rules eliminate competition among banks for acceptance by merchants.

26. The No Discount Rules preclude merchants from offering discounts to customers who use a particular payment card. The No Discount Rules allow discounts to customers who paid with cash. Following settlement of a challenge by the U.S. Department of Justice in 2011, merchants did begin to allow the offering of discounts, but only in limited circumstances. Before and after 2011, however, the No Discount Rules in all forms eliminated competition among banks for acceptance by merchants.

9

27. The No Surcharge Rules prohibit Plaintiffs from imposing a surcharge on consumers for the use of Visa-branded or MasterCard-branded payment cards. This prevents merchants from creating incentives for consumers to use cards that have more attractive terms to the merchant. The No Surcharge Rules limit and eliminate competition among banks for merchant acceptance of payment cards. In early 2013, Defendants altered their No Surcharge Rules to allow surcharges in limited circumstances, but debit card transactions still may not be surcharged and the rules continue to limit competition for acceptance by merchants.

28. But for the anticompetitive rules and practices described herein, the market for consumer acceptance of payment cards would be significantly more competitive. Among other things, merchants such as the Plaintiffs would have paid (and would continue to pay) significantly lower interchange fees for the benefit of accepting Defendants' payment cards. These anticompetitive rules are not reasonably necessary and do not otherwise create legally cognizable efficiencies in the payment card markets. Moreover, there are less restrictive alternative means that would allow Defendants to achieve any claimed efficiencies.

29. Visa and its member banks (including the issuing banks) have market power in the relevant market for merchant acceptance of general purpose credit cards in the United States. *United States v. Visa U.S.A., Inc.,* 163 F. Supp. 2d 332, 341 (S.D.N.Y.2001) *affirmed,* 344 F.3d 229 (2d Cir. 2003).

30. Master Card and its member banks (including the issuing banks) have market power in the relevant market for merchant acceptance of general purpose credit cards in the United States. *United States v. Visa U.S.A., Inc.,* 163 F. Supp. 2d 332, 341 (S.D.N.Y. 2001) *affirmed,* 344 F.3d 229 (2d Cir. 2003).

31. There are significant barriers to entry into the market for general purpose credit cards. *US v. Visa U.S.A., Inc., supra.* at 341. Defendants' conduct, and particularly the adoption of the anticompetitive rules described herein, demonstrates Defendants' market power in the credit card markets. Competition or potential competition between Visa and MasterCard does not eliminate the exercise of market power by either Defendant because MasterCard and Visa have adopted parallel rules that limit competition from merchant acceptance.

32. Visa and MasterCard together accounted for roughly 75% of all debit card purchases in 2004 and over 80% as of 2013. Both Visa, with its member banks, and MasterCard, with its member banks, have market power in the market for merchant acceptance of debit cards.

33. The market power of Defendants and their respective member banks in the market for merchant acceptance of debit cards is demonstrated by Defendants' conduct, including the adoption of the anticompetitive rules described herein. Competition or potential competition between Visa and MasterCard does not eliminate the exercise of market power by either Defendant because MasterCard and Visa have adopted parallel rules that limit competition from merchant acceptance.

**V. DEFENDANTS' INITIAL PUBLIC OFFERINGS DID NOT CURE THE RESTRAINTS OF TRADE**

34. In 2008, Visa and its member banks changed the ownership structure of Visa through an initial public offering ("IPO"). By way of the IPO, the member banks of Visa partially sold their ownership of Visa and restructured the governance of Visa, but the IPO did not change the fundamental nature of the combination, nor did it eliminate the anticompetitive rules described herein. None of the member banks in Visa took steps to

11

withdraw from the illegal combination that existed prior to the IPO. Indeed, following the IPO, the member banks and Visa continued their illegal and anticompetitive combination that eliminated competition among the issuing banks for merchant acceptance. For example, Visa and its member banks continued to set default interchange fees that eliminated competition among the issuing banks.

35. In 2006, MasterCard Incorporated and MasterCard International Incorporated made an initial public offering of ownership shares to the public and to MasterCard's member banks. The IPO did not change the fundamental nature of the combination, nor did it eliminate the anticompetitive rules described herein. None of the member banks in MasterCard took steps to withdraw from the illegal combination that existed prior to the IPO. Indeed, following the IPO, the member banks and MasterCard continued their illegal and anticompetitive combination that eliminated competition among the issuing banks for merchant acceptance. For example, MasterCard and its member banks continued to set default interchange fees that eliminated competition among the issuing banks.

### VI. PLAINTIFFS HAVE SUFFERED COMPETITIVE INJURY

36. The anticompetitive rules described herein have limited, if not eliminated, competition among issuing banks for merchant acceptance of payment cards. One result of this diminished competition is that interchange fees paid by merchants have been and continue to be set by Defendants at rates that are higher than would exist in a competitive market. From at least 2004 through the date of this Complaint, Plaintiffs have paid these inflated interchange fees, which resulted in increased costs to Plaintiffs and to their subscribers. Plaintiffs have suffered competitive injury from the anticompetitive rules described herein.

## VII. CLAIMS

37. Visa and its member banks are a combination within the meaning of Section 1 of the Sherman Act. The anticompetitive rules described herein are the result of agreements among Visa and the member banks, including issuing banks, to limit or eliminate competition in the market for merchant acceptance of debit cards and credit cards.

38. The anticompetitive rules described herein unreasonably restrain trade, in violation of 15 U.S.C. § 1. Visa and its member banks, including issuing banks, thereby have entered into a combination and agreements that unreasonably restrain trade in the market for merchant acceptance of debit cards and credit cards. The illegal combination and agreements continued after 2008, notwithstanding the Visa IPO.

39. MasterCard and its member banks are a combination within the meaning of Section 1 of the Sherman Act. The anticompetitive rules described herein are the result of agreements among MasterCard and the member banks, including issuing banks, to limit or eliminate competition in the market for merchant acceptance of debit cards and credit cards.

40. The anticompetitive rules described herein unreasonably restrain trade, in violation of 15 U.S.C. § 1. MasterCard and its member banks, including issuing banks, have thereby entered into a combination and agreements that unreasonably restrain trade in the market for merchant acceptance of debit cards and credit cards. The illegal combination and agreements continued after 2006, notwithstanding the MasterCard IPO.

41. Plaintiffs have been damaged by the anticompetitive actions of Defendants in amounts that will be proven at trial.

42. Because Defendants' wrongful conduct was committed in combination and as part of a conspiracy, Defendants are jointly and severally liable for all damages.

43. Plaintiffs are entitled to treble damages.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed.R.Civ.P. 38(b), Plaintiffs demand a jury trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A. Judgment in favor of each Plaintiff and against each Defendant, in an amount to be determined at trial including, but not limited to, compensatory damages, treble damages, and pre-judgment and post-judgment interest, as permitted by law;

B. An award of the cost of the suit, including a reasonable attorney's fee; and

C. Such other and further relief as the Court deems just, equitable, and proper.

DATED: May 1, 2015    Respectfully submitted:

/s/ James M. Evangelista
James M. Evangelista
**HARRIS PENN LOWRY LLP**
400 Colony Square, Suite 900
1201 Peachtree Street, NE
Atlanta, GA 30361
Phone: (404)961-7650
Fax: (404)961-7651
jim@hpllegal.com